Entered: May 28th, 2021
Signed: May 28th, 2021



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| In re:<br><br>JACQUELINE K. PIETERSE,<br><br>      Debtor. | Case Number:  20-17425-MCR<br>(Chapter 11) |
| JACQUELINE K. PIETERSE, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>TYLER DONEGAN DUNCAN REAL ESTATE SERVICES, INC., *et al.*,<br><br>      Defendants. | Adversary Number:  21-00061-MCR |

## MEMORANDUM OPINION REGARDING ORDER GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING AS TO DEFENDANT JOHN C. HANRAHAN

In this adversary proceeding, Plaintiff Jacqueline Kathleen Pieterse ("Pieterse") and Plaintiff Jeffrey M. Cahall ("Cahall") seek declaratory relief and compensatory and punitive damages in connection with a judgment obtained against them in state court prior to the commencement of Pieterse's Chapter 11 bankruptcy case.  All of the defendants in this

adversary proceeding filed motions to dismiss, including Defendant John C. Hanrahan ("Hanrahan").  Hanrahan is named as a defendant because he represents the state-court judgment creditors in Pieterse's bankruptcy proceeding and signed and filed a proof of claim on their behalf.

For the reasons stated below, the Court grants Hanrahan's motion to dismiss because it fails to state a claim upon which relief can be granted.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.      The State Court Litigation

On February 14, 2017, Tyler, Donegan, Duncan Real Estate Services, Inc. and TD Healthmed Realty Partners, LLC filed a complaint in the Circuit Court for Frederick County (the "State Court"), against Pieterse, Cahall, Keith Clever, HMRP, Inc. and TD Healthmed Realty Partners – Robinwood, LLC, asserting causes of action for breach of employment contract (Count I), interference with contracts (Count II), interference with prospective advantage (Count III), conversion (Count IV), civil conspiracy (Count V) and accounting (Count VI).  Compl. [Dkt. No. 1] (cited herein as "Compl.") at ¶¶ 21-22 and Exh. 1 (state court complaint).  The State Court case is styled *Tyler Donegan Duncan Real Estate Services, Inc., et al. v. Jeffrey Cahall, et al.*, Case Number 10-C-17-000401, and referred to herein as the "State Court Action."

On April 19, 2017, Pieterse, Cahall and TD Healthmed Realty Partners – Robinwood, LLC filed a countercomplaint against the State Court plaintiffs and Chad Tyler, asserting five causes of action, including unjust enrichment (Count III), tortious interference (Count IV) and defamation (Count V).  *See* docket for State Court Action.[1]  The other two causes of action are

---

[1] The Court can take judicial notice of public filings.  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

not readily apparent from the docket for the State Court Action or from the Complaint filed herein. On August 10, 2017 and December 8, 2017, some or all of the State Court defendants/counter-plaintiffs filed an amended countercomplaint adding two causes of action that are not specified in the record (Counts VI and VII) and a second amended countercomplaint adding a cause of action for breach of contract (Count VIII), respectively. *See* docket for State Court Action. At some point during the proceedings, the State Court defendants/counter-plaintiffs dismissed Counts I, II, VI and VII of their countercomplaint and dismissed Pieterse as a counter-plaintiff. Compl. Exh. 10 (State Court's opinion and order) at p. 8.

On April 15, 2018 and September 6, 2018, the plaintiffs in the State Court Action filed an amended complaint adding a cause of action for tradename/trademark infringement (Court VII) and a second amended complaint adding a cause of action for *lis pendens* (Court VIII), respectively. Compl. at ¶¶ 25 and 28 and Exhs. 3 and 5 (state court amended and second amended complaints).

The State Court held a bench trial over 12 nonconsecutive days from March 11, 2019 to April 17, 2019. Compl. Exh. 10 (State Court opinion and order) at p. 8. During the trial, the State Court granted motions for judgment on all counts of the Complaint as to Keith Clever and on Count III of the Complaint (which sought judgment against all the State Court defendants for interference with prospective advantage) in its entirety. *Id.*

On July 9, 2019, the State Court entered judgment in favor of the plaintiffs and against Cahall for breach of contract (Count I), against Pieterse and Cahall for interference with contracts (Count II), against Cahall for conversion (Count IV) and against Pieterse and Cahall for civil conspiracy (Count V). Compl. at ¶ 37 and Exh. 10 (State Court opinion and order) at

pp. 9-22 and 30.  The State Court awarded damages to the plaintiffs in the total amount of

$442,785.67.  Compl. Exh. 10 (State Court opinion and order) at p. 30.  The State Court

determined that the equitable remedy of an accounting (Count VI) was not appropriate in light

of the award of damages and that the claim for "lis pendens" (Count VIII) was not an

appropriate remedy.  Compl. Exh. 10 (State Court opinion and order) at p. 30.  With respect to

the tradename/trademark infringement claim (Count VII), the State Court enjoined the

defendants from using the name "HMRP, Inc." or the name "TD Healthmed Realty Partners –

Robinwood, LLC" and ordered the defendants to cancel the registration of those names with

the Maryland Department of Assessments and Taxation.  Compl. at ¶ 51 and Exh. 10 (State

Court judgment) at p. 30.  The State Court rejected all of the defendants/counter-plaintiffs'

claims.  Compl. Exh. 10 (State Court judgment) at pp. 22-26.

On March 30, 2020, the State Court amended the amount of the judgment to the

following:

| | |
|---|---|
| Damages for breach of contract against Cahall,<br>    individually | $342,923.79 |
| Damages for conversion against Pieterse and Cahall,<br>    jointly and severally | $342,923.79 |
| Damages for interference with contract against Cahall,<br>    individually | $8,723.40 |
| Damages for interference with contract against Pieterse<br>    and Cahall, jointly and severally | $24,600.00 |
| Total judgment against Pieterse | $367,523.79 |
| Total judgment against Cahall | $376,247.19 |

Compl. at ¶ 49 and Exh. 11 (State Court amended judgment) at p. 3.  The amended judgment

states that all other provisions of the July 9, 2019 order "remain in full force and effect as

though specifically set forth herein."  Compl. Exh. 11 (State Court amended judgment) at p. 3.

The State Court's judgment, as modified by the amended judgment, is referred to herein as the

"State Court Judgment."

On April 22, 2020, Pieterse and Cahall filed notices of appeal of the State Court Judgment to the Court of Special Appeals of Maryland (the "Court of Special Appeals"). *See* docket for State Court Action. The appellate case is styled *Jeffrey M. Cahall, et al. v. Tyler Donegan Duncan Real Estate Services, Inc., et al.*, Case Number CSA-REG-0195-2020 (the "First State Court Appeal"). It is the Court's understanding that this appeal is proceeding as to Cahall but has been stayed as to Pieterse as a result of her bankruptcy filing. *See* docket for First State Court Appeal.

On July 13, 2020, Pieterse filed a notice of appeal of what appears to be a post-judgment discovery order to the Court of Special Appeals. *See* docket for State Court Action. The appellate case is styled *Jacqueline Pieterse v. Tyler Donegan Duncan Real Estate Services, Inc.*, Case Number CSA-REG-0450-2020 (the "Second State Court Appeal"). It is the Court's understanding that this appeal has been stayed as a result of Pieterse's bankruptcy filing. *See* docket for Second State Court Appeal.

B.    The Bankruptcy and Adversary Proceedings

On August 7, 2020, Pieterse filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

Despite the pendency of the appeal of the State Court Judgment, on March 9, 2021, Pieterse and Cahall commenced the instant adversary proceeding in this Court by filing a Complaint [Dkt. No. 1] (the "Complaint") against Defendants Tyler Donegan Duncan Real Estate Services, Inc. ("TDD"), TD Healthmed Realty Partners, LLC ("TD Healthmed"), Chadley S. Tyler ("Tyler"), Joseph Donegan ("Donegan"), Brian K. Duncan ("Duncan"), John M. Robinson ("Robinson"), John H. Doud, III ("Doud") and Hanrahan. TDD, TD Healthmed,

Tyler, Donegan, Duncan, Robinson, Doud and Hanrahan are referred to collectively herein as the "Defendants" unless otherwise stated.

The gravamen of the Complaint is that the State Court Judgment was based on an alleged "illegal" employment contract between Cahall and TDD. The other remaining Defendants are either affiliated with TDD or represented TDD in the State Court Action. The Complaint alleges that the employment contract between Cahall and TDD was illegal because Cahall was not a licensed realtor and/or broker and could not be employed by TDD in the capacity in which he was hired. Therefore, the Complaint asserts that there could be no damages arising from the breach of the alleged illegal contract and the continued pursuit of the State Court Judgment perpetrates a fraud upon the State Court and this Court.

Count I of the Complaint asserts a claim for "void judgment and invalid lien" and alleges "[i]n rendering the judgment against Pieterse, the trial court acted without any authority, discretionary or otherwise, and lacked subject matter jurisdiction over these issues" and "in rendering the judgment against Pieterse based on these unpled issues, the trial court did not provide Pieterse with adequate notice or an opportunity to conduct a reasonable discovery or an opportunity to present an adequate defense at trial, thereby depriving Pieterse of her constitutional rights to due process, as provided her by the 14th Amendment to the United States Constitution." Compl. at pp. 46-48. Count I requests that the Court (i) declare that the State Court Judgment is void, (ii) vacate the State Court Judgment, (iii) declare that the judicial lien against the home of Pieterse arising from the State Court Judgment is invalid and of no further force and effect, and (iv) declare the claim in Pieterse's bankruptcy case arising from the State Court Judgment is invalid and of no further force and effect. Compl. at p. 48.

Count II asserts a claim for "fraud perpetuated upon the Plaintiffs" and alleges that the Defendants "concocted a scheme to defraud Plaintiffs and as part of that scheme, made several material false statements and promises and [sic] to Plaintiffs" and "commenced and maintained a civil litigation against Plaintiffs in order to obtain a fraudulent judgment against Plaintiffs." Compl. at pp. 48-49. Count II requests compensatory damages of $750,000 and punitive damages of $1,500,000 against all Defendants, jointly and severally. Compl. at p. 49.

Count III asserts a claim for "civil conspiracy to perpetuate a fraud upon the Court" and alleges "Defendants, TDD, Tyler, Donegan, Duncan, Robinson and Doud, intentionally and with malice toward the Plaintiffs, concocted a scheme to secure a judgment against Plaintiffs by deceiving the state courts and this Court through a planned and calculated series of lies, misrepresentations, half-truths and obfuscations with respect to the law and facts applicable to the litigation they brought in the state court against Plaintiffs" and "the Defendants intentionally, knowingly and with actual malice toward the Plaintiffs, colluded and conspired to perpetuate a fraud upon the state courts and this Court in order to secure a favorable judgment against Plaintiffs." Compl. at pp. 49-52. Count III requests compensatory damages of $750,000 and punitive damages of $1,500,000 against all Defendants, jointly and severally. Compl. at p. 52.

Count IV asserts a claim for "civil conspiracy to defraud the Plaintiffs" and alleges "[t]he Defendants, TDD, Tyler, Donegan, Duncan, Robinson and Doud, colluded and conspired to defraud the Plaintiffs, made false representations to Plaintiffs knowing that the representations were false or made the false statements with reckless disregard for the truth, and made the statements with [sic] the express purpose of defrauding the Plaintiffs." Compl.

at p. 52.  Count IV requests compensatory damages of $750,000 and punitive damages of $1,500,000 against all Defendants, jointly and severally.  *Id.*

Count V asserts a claim for "aiding and abetting" and alleges "Defendants, Hanrahan, Robinson and Doud, knowingly and intentionally engaged in egregious misconduct in violation of the legal, professional and ethical duties and outside the scope of their employment by the other Defendants and for their individual benefit, in order to aid and abet TDD, Tyler, Donegan and Duncan in their scheme to perpetrate a fraud upon the Plaintiffs and a fraud upon the courts, and obtain a wrongful judgment against Plaintiffs and attempt to collect on that wrongful judgment against Plaintiffs" and "Hanrahan, Robinson and Doud knew that their misconduct would result in the tortious acts of the other Defendants."  Compl. at p. 53.  Count V requests compensatory damages of $750,000 against all Defendants, jointly and severally.  *Id.*

On April 8, 2021, Hanrahan filed a Motion to Dismiss Adversary Proceeding as to John C. Hanrahan [Dkt. No. 9] (the "Motion to Dismiss"), on May 5, 2021, Pieterse and Cahall filed a Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Adversary Complaint [Dkt. No. 19], and on May 17, 2021, Hanrahan filed Reply to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Adversary Complaint [Dkt No. 31]. On May 27, 2021, the Court held a hearing on the Motion to Dismiss and the related responses.

II.    STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b), provides as follows:  "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion ... failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contests regarding the facts, merits of a claim or applicability of defenses. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). A motion to dismiss under Rule 12(b)(6) will be granted if the allegations of the complaint, construed in the light most favorable to the plaintiff, fail as a matter of law to state a claim for which relief can be granted. *F.T.C. v. AmeriDebt, Inc.,* 343 F.Supp.2d 451, 459 (D. Md. 2004) (citing *Carter v. Burch,* 34 F.3d 257, 261 (4th Cir.1994)). The Court must accept as true all well-pleaded material allegations of the complaint and must liberally construe it as a whole. *F.T.C. v. AmeriDebt, Inc.,* 343 F.Supp.2d at 459 (citing *Edwards v. Johnston Cty. Health Dep't,* 885 F.2d 1215, 1217 n.4 (4th Cir.1989) and *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *F.T.C. v. AmeriDebt, Inc.,* 343 F.Supp.2d at 459 *(*citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). Plausibility does not require probability but does require something more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 *(*citing *Twombly*, 550 U.S. at 556). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions. Threadbare recitals of a

cause of action's elements, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7009, provides:  "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9 (emphasis added*)*.  Circumstances constituting fraud or mistake consist of the time, place and contents of the false representations as well as the identity of the person making the misrepresentation and what he obtained thereby.  *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  The requirements of Rule 9(b) apply to all cases in which the gravamen of the claim is fraud, even if the theory supporting the claim is not technically termed fraud.  *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).  A complaint that fails to specifically allege the time, place and nature of the alleged fraud is subject to dismissal pursuant to Rule 12(b)(6). *Id.*  "This heightened pleading requirement serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense."  *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017) (citing *Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009)).

III.   <u>ANALYSIS</u>

Hanrahan argues that the Complaint must be dismissed as to him because it seeks to collaterally attack and re-litigate a final judgment entered by the State Court.  Mot. to Dism. at p. 1.  More specifically, he argues (i) Cahall is not a debtor and his claims are not within the jurisdiction of this Court because they are not part of a "core proceeding;" (ii) under the

*Rooker-Feldman* doctrine, this Court lacks jurisdiction over Pieterse and Cahall's claims; (iii) Pieterse and Cahall's claims are alternatively barred under the doctrines of *res judicata*, collateral estoppel and collateral attacks on judgments; and (iv) accepting as true all properly pled factual allegations in the Complaint, and drawing all inferences in favor of Pieterse and Cahall, the Complaint fails to state a claim against Hanrahan upon which relief can be granted. Mot. to Dism. at pp. 1-2.

Because the Complaint fails to state a claim against Hanrahan upon which relief can be granted, dismissal of the Complaint against him is appropriate and the Court need not examine Hanrahan's other arguments.

> A.   Pleading a Claim for Aiding and Abetting

At the hearing on May 27, 2021, the Plaintiff agreed that the only count of the Complaint pertaining to Hanrahan is Count V, which asserts a claim for "aiding and abetting" based on Hanrahan, Robinson and Doud's efforts to collect the State Court Judgment on behalf of the State Court plaintiffs. Maryland recognizes aider and abettor tort liability, which "requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Alleco Inc. v. Harry & Jeanette Weinberg Foundation*, 340 Md. 176, 199, 200-01 (1995). To establish a claim for aiding and abetting, a plaintiff must show: (i) there is a violation of the law (*i.e.*, a tort) by the principal; (ii) the defendant knew about the violation; and (iii) the defendant gave substantial assistance or encouragement to the principal to engage in the tortious conduct. *Alleco,* 340 Md. at 186. Consequently, the Court's analysis begins with a determination of whether Pieterse and Cahall adequately allege that Hanrahan committed an underlying tort.

B.    Complaint's Allegations as to Hanrahan

Only 17 paragraphs in the 210-paragraph, 54-page Complaint expressly or impliedly

refer to Hanrahan:

13.    Defendant, John C. Hanrahan ("Hanrahan"), whose principal business address is 8 E. 2nd St, STE 200, Frederick, MD 21701, has been a practicing licensed attorney in Maryland for at least 10 years, currently represents TDD as a creditor in Case No. 20-17425, and filed TDD's Proof of Claim with this Court on or about September 17, 2020;

*    *    *

19.    Defendants' intentional, egregious and malicious misconduct has caused significant damages to the Plaintiffs, including economic and non-economic compensatory damages and punitive damages;

*    *    *

176.    TDD, Tyler and Duncan, immediately hired Hanrahan to serve as co-counsel and continue to prosecute their fraudulent scheme in bankruptcy court;

177.    Hanrahan has had a long relationship with Tyler, TDD and TMC and is currently TMC's registered agent in the State of Maryland;

178.    He had an absolute duty to inquire as to the circumstances surrounding the judgment and knew, or had to know, of TDD and Tyler's criminal misconduct and the illegality of the contract, the fraud perpetrated upon the Plaintiffs and the court by TDD, Tyler, Donegan, Duncan, Robinson and Doud.  He is charged and imputed with the knowledge his client and Robinson and Doud have.  He knew the grounds for the active appeal, he knew the contract was illegal, he had too.  And Hanrahan knew that Pieterse had never been accused of fraud by his client.  It should not be surprising that Tyler had engaged another win-at-all-costs assistant;

179.    Hanrahan knew that Pieterse had contested the validity of TDD's claim from the moment she filed her Petition with this Court;

180.    Hanrahan heard and responded to Pieterse's statements on the record during the Creditor's Meeting on September 14, 2020 that the judgment was void and had been procured by fraud;

181.    But Hanrahan also pushed his professional, ethical and legal duties aside and chose the path that Robinson and Doud had followed, aid the fraud, help coverup his client's criminality and get paid.  He executed and submitted a Proof of Claim with this Court based on the void and fraudulently

obtained judgment, knowing of his client's tortious conduct, knowing that he was lending substantial assistance to Tyler, TDD and the other Defendants in their effort to collect on their defective judgment;

182.    He further provided proof of this misconduct by filing on behalf of TDD and as directed by Tyler a motion for relief from stay against the Plaintiff on December 2, 2020 knowing that the motion was frivolous and based on intentional false statements that he used as the basis for the motion;

183.    But, as always has been the case with the fraudsters, Tyler, et al. was in constant need of cash, so falsely accused Pieterse of failing to pay her mortgage and try to get this Court to award TDD over $3,000 per month in payments from Pieterse which, would likely drive Pieterse into a position where should could not pay her bills and then allow TDD to move to take her home, the home the Defendants have been trying to get to since TDD filed the frivolous lis pendens [claim] in September 2018;

184.    Even when Pieterse told Hanrahan she would seek sanctions if he did not withdraw his motion for relief on January 26, 2021, and while Hanrahan conceded to Pieterse the grounds were not true, also on January 26, 2021, he has since refused to inform this Court of these false facts, and now has further just recently, on March 4, 2021, reneged on his concession to Pieterse and continues to maintain his frivolous motion, with the knowledge it is patently frivolous and groundless, a pattern consistent with the misconduct displayed by other Defendants since January 2017;

*        *        *

204.    Since engaging Hanrahan, TDD and Tyler have coordinated efforts between Robinson, Doud and Hanrahan in an effort to delay the appeal and accelerate the bankruptcy case;

205.    Hanrahan's filing of his December 2, 2020 frivolous motion for relief from stay, directed by Tyler personally, was made within two weeks after the Maryland Court of Special Appeals found that there was good cause shown by Cahall to not stay the hearing of his appeal because of Pieterse's bankruptcy stay.  In response to the appellate court's October ordering the parties to show cause why Cahall's appeal should not be stayed until Pieterse's bankruptcy case was resolved, Robinson and Doud responded that they had no objection to staying Cahall's appeal until resolution of the bankruptcy case;

206.    TDD's motion for relief was another desperate attempt for TDD to get money or, even better, have the automatic stay lifted so they could potentially sell Pieterse's home before the Court of Special Appeals issues its ruling.

*        *        *

208.    Furthermore, just two days after Robinson and Doud submitted their feeble Appellee Brief, Hanrahan, admitting that he had discussed the matter with Tyler, refused to acknowledge that he would abide by his January promises and concessions that he had made false statements that Pieterse had no missed any mortgage payments, again the very foundation and cause for TDD's motion for relief from stay;

209.    Hanrahan has violated his professional, legal and ethical duties by intentionally assisting TDD and the other Defendants to collect on a judgment he knows, or should know, is void, based on TDD's serious criminal misconduct and the Defendants fraudulent scheme to defraud Pieterse, Cahall and the courts;

210.    Hanrahan's signing and submitting of the Proof of Claim in Pieterse's bankruptcy matter, and his filing of the frivolous motion for relief from stay and his refusal to withdraw said motion and his reneging on the most basic of promises and concessions regarding his false statements in this matter are all clear evidence that he has knowingly provided substantial assistance to the other Defendants as continue to prosecute TDD's meritless litigation and attempt to collect on their defective judgment and take Pieterse's home[.]

*See generally* Compl. and paragraphs referenced above.

After setting forth this background, Count V alleges:

Defendants, Hanrahan, Robinson and Doud, knowingly and intentionally engaged in egregious misconduct in violation of the legal, professional and ethical duties and outside the scope of their employment by the other Defendants and for their individual benefit, in order to aid and abet TDD, Tyler, Donegan and Duncan in their scheme to perpetrate a fraud upon the Plaintiffs and a fraud upon the courts, and obtain a wrongful judgment against Plaintiffs and attempt to collect on that wrongful judgment against Plaintiffs;

Hanrahan, Robinson and Doud knew that their misconduct would result in the tortious acts of the other Defendants;

As a result, the Plaintiffs have suffered enormous financial damage, devastating emotion and mental pain and suffering and damage to their personal relationship.

Compl. at p. 53.  Count V seeks $750,000 in compensatory damages against Robinson, Doud and Hanrahan, jointly and severally.

14

C.    Hanrahan's Role

The Complaint does not allege that Hanrahan represented any of the parties or was a party in the State Court Action at the trial court level or the appellate court level.  In fact, the dockets of the trial court and appellate court proceedings confirm that he was neither counsel nor a party in those proceedings.  *See* docket for State Court Action, docket for First State Court Appeal and docket for Second State Court Appeal.

Moreover, the Complaint does not allege any involvement by Hanrahan in the dispute between the parties to the State Court Action until after Pieterse filed her bankruptcy petition. Paragraph 175 of the Complaint states that the pressure and cost of litigating with the State Court plaintiffs caused Pieterse to file bankruptcy on August 7, 2020.  Compl. at ¶ 175.  The next paragraph states that the State Court plaintiffs "immediately hired Hanrahan to serve as co-counsel and continue to prosecute their fraudulent scheme in bankruptcy court."  Compl. at ¶ 176.  Therefore, the timeframe for any alleged aiding and abetting by Hanrahan begins on or after Pieterse's bankruptcy filing.[2]

According to the docket in the main bankruptcy case, Hanrahan took six actions during the course of his representation of TDD in the main bankruptcy case.  First, Hanrahan filed a Notice of Appearance and Request for Service of Notices on August 20, 2020, thereby entering his appearance in the main bankruptcy case as counsel for TDD.  *See* Case No. 20-17425, Dkt. No. 15 (notice of appearance).  Second, he appeared at the meeting of creditors held on September 10, 2020.  Compl. at ¶ 180.  Third, he signed and filed a proof of claim for TDD on September 17, 2020.  *See* Case No. 20-17425, Claim No. 4-1 (TDD's proof of claim).  Fourth, he filed and prosecuted a motion for relief from stay with respect to Pieterse's real property.

---

[2] At the May 27, 2021 hearing, the Plaintiffs conceded that they have no reason to believe Hanrahan was involved before Piertese filed her bankruptcy case in August 2020.

*See* Case No. 20-17425, Dkt. Nos. 26, 31, 40, 41, 51, 53, 71 and 77 (motion, amended motion, amended hearing notice, certificate of service, exhibit list, notice of continuance of hearing, proceeding memo and order denying motion).  Fifth, he filed a consent on behalf of TDD to Pieterse's motion to extend the exclusive periods for filing a plan and soliciting acceptances, which the Court granted.  *See* Case No. 20-17425, Dkt. Nos. 32, 34 and 39 (motion, consent and order granting motion).  Sixth, Hanrahan filed an objection to Pieterse's motion to disqualify him as TDD's counsel, which Pieterse later withdrew.  *See* Case No. 20-17425, Dkt. Nos. 61, 84 and 91 (motion, opposition and withdrawal).

The Complaint's allegations relating to Hanrahan fall into two categories – bald, conclusory statements regarding his alleged aiding and abetting of the other Defendants' purported fraudulent scheme and innocuous statements regarding his efforts to protect TDD's interests in Pieterse's bankruptcy case.  Examples of the conclusory, unsupported allegations include the following:

> ➤ The other Defendants hired Hanrahan "to prosecute their fraudulent scheme in bankruptcy court."  Compl. at ¶ 176.

> ➤ Hanrahan "knew, or had to know, of [the] criminal misconduct and the illegality of the contract, the fraud perpetrated upon the Plaintiffs and the court by [the other Defendants].  … [H]e knew the contract [on which the State Court Judgment is based] was illegal."  Compl. at ¶ 178.

> ➤ "Hanrahan also pushed his professional, ethical and legal duties aside and chose [to] aid the fraud, help cover up [sic] his client's criminality and get paid.  He executed and submitted a Proof of Claim with this Court based on the void and fraudulently obtained judgment, knowing of his client's tortious conduct, knowing that he was lending substantial assistance to … the other Defendants in their effort to collect on their defective judgment."  Compl. at ¶ 181.

> ➤ Hanrahan filed a motion for relief from stay "knowing that the motion was frivolous and based on intentional false statements that he used as the basis for the motion."  Compl. at ¶ 182.

➢ The Defendants, referred to as "fraudsters," "falsely accused Pieterse of failing to pay her mortgage" and sought adequate protection payments Pieterse could not afford and would "allow TDD to move to take her home." Compl. at ¶ 183.

➢ "Even when Pieterse told Hanrahan she would seek sanctions if he did not withdraw his motion for relief … and while Hanrahan conceded to Pieterse the grounds were not true, … [he] continues to maintain his frivolous motion, with the knowledge it is patently frivolous and groundless, a pattern consistent with the misconduct displayed by other Defendants since January 2017." Compl. at ¶ 184.

➢ Hanrahan "refused to acknowledge … that he had made false statements that Pieterse had no missed any mortgage payments, again the very foundation and cause for TDD's motion for relief from stay." Compl. at ¶ 208.

➢ "Hanrahan has violated his professional, legal and ethical duties by intentionally assisting TDD and the other Defendants to collect on a judgment he knows, or should know, is void, based on TDD's serious criminal misconduct and the Defendants fraudulent scheme to defraud Pieterse, Cahall and the courts." Compl. at ¶ 209.

➢ Hanrahan filed TDD's proof of claim, filed its lift stay motion and refused to acknowledge any false statements, which "are all clear evidence that he has knowingly provided substantial assistance to the other Defendants as continue to prosecute TDD's meritless litigation and attempt to collect on their defective judgment and take Pieterse's home." Compl. at ¶ 210.

At first blush, these allegations are concerning, but when they are stripped of hyperbole and viewed in the context of the Complaint as a whole, it is clear that the allegations against Hanrahan are unsubstantiated and do not pass the "plausibility" standard. This is particularly true when one considers "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions … [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. The insufficiency of the Complaint's allegations against Hanrahan is more apparent when considered in the context of Rule 9(b), which requires that Pieterse and Cahall state "with particularity" the circumstances relating to any fraud-based claims. Fed. R. Civ. P. 9(b). *See also Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) (requirements

of Rule 9(b) apply to all cases in which the gravamen of the claim is fraud, even if the theory supporting the claim is not technically termed fraud).  Courts in this District have held that a plaintiff alleging fraud must make particular allegations of the time, place, speaker and contents of the allegedly false acts or statements and must identify each individual defendant's participation in the alleged fraud.  *Adams v. NVR Homes, Inc.*, 193 F.R.D. at 250   The Complaint does not allege any of these critical elements.   The Complaint's allegations regarding Hanrahan's purported involvement in any fraud or misconduct are conclusory and unsupported.   The Complaint falls far short of meeting the pleading standard set forth by applicable case law and Rule 9(b).

Examples of the second category of allegations – innocuous statements regarding Hanrahan's role – include the following:

> ➤ Hanrahan represents TDD and filed its proof of claim.  Compl. at ¶ 13.
>
> ➤ Hanrahan "has had a long relationship with Tyler, TDD and TMC and is currently TMC's registered agent in the State of Maryland." Compl. at ¶ 177.
>
> ➤ "Hanrahan knew that Pieterse had contested the validity of TDD's claim. from the moment she filed her Petition with this Court." Compl. at ¶ 179.
>
> ➤ "Hanrahan heard and responded to Pieterse's statements on the record during the Creditor's Meeting on September 10, 2020 [sic] that the judgment was void and had been procured by fraud." Compl. at ¶ 180.
>
> ➤ "Since engaging Hanrahan, TDD and Tyler have coordinated efforts between Robinson, Doud and Hanrahan in an effort to delay the appeal and accelerate the bankruptcy case." Compl. at ¶ 204.
>
> ➤ Hanrahan's filing of TDD's lift stay motion "was made within two weeks after the Maryland Court of Special Appeals found that there was good cause shown by Cahall to not stay the hearing of his appeal because of Pieterse's bankruptcy stay" and Robinson and Doud "had no objection to staying Cahall's appeal until resolution of the bankruptcy case." Compl. at ¶ 205.
>
> ➤ TDD's lift stay motion was an attempt "to get money or, even better, have the automatic stay lifted so they could potentially sell Pieterse's home before the Court of Special Appeals issues its ruling." Compl. at ¶ 206.

The foregoing allegations, even if assumed to be true and construed in the light most favorable to Pieterse and Cahall, establish nothing with respect to an aiding and abetting claim. The actions described do not constitute misconduct or wrongdoing. The nature of the actions alleged constitutes normal legal strategy for enforcing a judgment creditor's rights in bankruptcy. A judgment creditor is entitled to engage counsel to represent its interests in a bankruptcy proceeding and counsel may take actions to enforce his client's judgment (such as filing and prosecuting a lift stay motion and filing a proof of claim) even if the judgment forming the basis for the claim is disputed and/or not yet final. In fact, if Hanrahan had not filed a proof of claim for TDD, TDD could have lost valuable rights with respect to the State Court Judgment, including its rights to a distribution from the bankruptcy estate, to vote on any plan proposed by Pieterse and to be heard in the bankruptcy proceeding. *See* Fed. R. Bankr. P. 3004(c)(2) ("Any creditor … whose claim … is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim … within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution."). *See also* Case No. 20-17425, Dkt. No. 20 (Schedules D and E/F, which do not list TDD as a creditor, thereby requiring that TDD file a proof of claim to be able to participate in voting and distribution). The failure to file a proof of claim could also have had potential preclusive effects as to TDD in connection with Pieterse and Cahall's appeal of the State Court Judgment whereas the filing of the proof of claim maintains the *status quo* while the State Court Judgment is fully and finally adjudicated.

Although Pieterse and Cahall dispute the basis for the State Court Judgment, it is irrefutable that TDD has a judgment against Pieterse and Cahall, and TDD and its counsel can

(and should) take those actions necessary to preserve and protect TDD's claim while the challenges to its validity and enforceability are resolved. To hold otherwise would not only result in creditors losing valuable rights but would have a chilling effect on the ability of a disputed creditor to retain counsel.

      D.    <u>Pieterse and Cahall's Claim Against Hanrahan for Aiding and Abetting</u>

As stated above, to establish a claim for aiding and abetting, a plaintiff must show: (i) there is a violation of the law (*i.e.*, a tort) by the principal; (ii) the defendant knew about the violation; and (iii) the defendant gave substantial assistance or encouragement to the principal to engage in the tortious conduct. *Alleco Inc. v. Harry & Jeanette Weinberg Foundation*, 340 Md. 176, 186 (1995). "A defendant may be held liable for aiding and abetting 'if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort.'" *Adams v. NVR Homes, Inc.*, 193 F.R.D. at 250 (quoting *Alleco,* 340 Md. at 199). Here, Pieterse and Cahall have failed to plead facts in support of at least two of these elements with respect to Hanrahan.

The specific misconduct alleged in Count V is that Hanrahan, along with the other two attorney Defendants, Robinson and Doud, "knowingly and intentionally engaged in egregious misconduct in violation of the legal, professional and ethical duties and outside the scope of their employment by the other Defendants and for their individual benefit, in order to aid and abet TDD, Tyler, Donegan and Duncan in their scheme to perpetrate a fraud upon the Plaintiffs and a fraud upon the courts, and obtain a wrongful judgment against Plaintiffs and attempt to collect on that wrongful judgment against Plaintiffs" and "knew that their misconduct would result in the tortious acts of the other Defendants." Compl. at p. 53. Pieterse and Cahall's opposition to the Motion to Dismiss adds that Hanrahan "aided and abetted his fraudster client"

by signing TDD's proof of claim with "prior knowledge of the accusations leveled against the other Defendants and the Defendants' own admissions that they have violated criminal law" and that, by signing the proof of claim, Hanrahan attested to the validity of the claim. Opp. to Mot. to Dism. at p. 22.

Considered together, the fraudulent conduct alleged in the Complaint relates to the Defendants' acts in obtaining the State Court Judgment and the Defendants' acts in enforcing the State Court Judgment. Other than the bald, conclusory statements discussed above, the Complaint pleads no facts to demonstrate that Hanrahan knew the other Defendants may have committed any alleged fraud or other tort in connection with obtaining the State Court Judgment or that Hanrahan engaged in a conspiracy or gave "substantial assistance or encouragement" to the other Defendants to engage in the alleged tortious conduct in obtaining the State Court Judgment. This is supported by the State Court dockets, which confirm that Hanrahan had no involvement in the State Court Action or the subsequent appeals, and the Complaint, which states that Hanrahan was retained by TDD after Pieterse filed for bankruptcy. *See* docket for State Court Action, docket for First State Court Appeal, docket for Second State Court Appeal and Compl. at ¶ 176.

Instead, the allegations against Hanrahan are limited to his role in enforcing the State Court Judgment by pursuing an unsuccessful motion for relief from automatic stay and by filing TDD's proof of claim despite having "prior knowledge of the accusations leveled against the other Defendants and the Defendants' own admissions that they have violated criminal law[.]" Opp. to Mot. to Dism. at p. 22. Having prior knowledge of Pieterse and Cahall's challenges to the State Court Judgment in no way implicates Hanrahan of any wrongdoing. As stated previously, TDD has a judgment against Pieterse and Cahall that required preservation

in Pieterse's bankruptcy case regardless of any ongoing challenges to the validity and enforceability of the State Court Judgment.  As for knowledge that the other Defendants admitted to violating criminal law, it is unclear to what criminal acts the other Defendants allegedly admitted, but there is nothing in the record to indicate that Hanrahan had knowledge of any alleged criminal activity or why any such knowledge would prevent him from protecting TDD's interests in this bankruptcy case.  The only admission alleged in the Complaint is that TDD employed Cahall with knowledge that he was not a licensed real estate broker, a point raised and addressed during the State Court trial.  *See, e.g.,* Compl. at ¶¶ 69, 72, 141 and 147.[3]

At the May 27, 2021 hearing, the Plaintiffs argued that Hanrahan aided and abetted the other Defendants because he signed TDD's proof of claim based on personal knowledge.  In support, the Plaintiffs cite *Schmidt v. Rodriguez (In re Rodriguez)*, 2013 WL 2450925 (Bankr. S.D. Tex. Jun. 5, 2013).  In *Rodriguez*, counsel for the creditor signed the proof of claim "to the best of my knowledge, information, and reasonable belief."  *Rodriguez*, 2013 WL 2450925 at *3.  Here, Hanrahan signed TDD's proof of claim under the following statement:  "I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct."  Case No. 20-17425, Claim No. 4-1 (TDD's proof of claim). The Plaintiffs argued at the hearing that, by signing the claim, Hanrahan attested to the validity of the claim and to his personal knowledge of the facts underlying the claim.

---

[3] The Complaint also alleges  "And the wrongdoers, Robinson, Doud and Tyler, did what they had done since the Plaintiffs [sic] filed their motion to alter or amend judgment  in July 2019, they admitted their guilt by remaining stone silent in the face of  being accused of perhaps the most egregious behavior lawyers and licensed brokers can be accused of, lying to the court and defrauding real estate clients[.]" Compl. at ¶ 170.  Although the court is hesitant to consider silence as an "admission" to violating criminal law, there is nothing in the record demonstrating that Hanrahan had knowledge of any alleged admissions of misconduct by the other Defendants in obtaining the State Court Judgment that would have affected his representation of TDD in protecting its judgment in the bankruptcy case.

Although the language in TTD's claim is somewhat similar to the language in the claim in *Rodriguez*, the Court finds the Plaintiffs' argument unpersuasive. To begin with, *Rodriguez* concluded that counsel for the creditor became a witness by signing the proof of claim; it did not conclude that counsel was attesting that the claim was valid or that counsel had personal knowledge of the facts supporting the claim. Also, even if it were factually on point, *Rodriguez* is not binding authority on this Court. Relying on the plain language of the proof of claim, the Court finds that Hanrahan attested only to the fact that he had "a reasonable belief that the information is true and correct" as stated in the claim, not that he had personal knowledge of the facts underlying the claim.[4] The Court also finds that Hanrahan had a good faith basis to think he had a "reasonable belief" that the claim was valid because the claim arose from a judgment entered by a Maryland state court. The Complaint does not allege any facts to the contrary. As discussed above, it was reasonable for Hanrahan to sign and file the proof of claim even though the Plaintiffs had appealed the State Court Judgment because, if he had not done so, TDD could have lost valuable rights in the bankruptcy proceedings, including the right to vote on a plan and the right to participate in any distribution from Pieterse's bankruptcy estate.

The Court need not address the other element for an aiding and abetting claim (*i.e.*, a tort committed by the other Defendants) because all three elements for an aiding and abetting claim must be plead with particularity and the Court concludes that the second and third elements were not.

---

[4] During the May 27, 2021 hearing, Cahall stated in his argument that the Plaintiffs concede the aiding and abetting claim must fail if Hanrahan did not sign the proof of claim based on personal knowledge.

The Complaint also alleges that "the Plaintiffs have suffered enormous financial damage, devastating emotion and mental pain and suffering and damage to their personal relationship," Compl. at p. 53, but again, the Complaint alleges no facts in support of this conclusion or in support of the Plaintiffs' claimed damages of $750,000.

IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Complaint fails to state a claim against Hanrahan upon which relief can be granted.  Accordingly, the Court will grant the Motion to Dismiss and dismiss the Complaint with prejudice as to Hanrahan.    An order consistent with this Memorandum will be issued contemporaneously herewith.

cc:    All parties
       All counsel

**END OF OPINION**